# MARZEC LAW FIRM, P.C.

DARIUS A. MARZEC IS LICENSED TO PRACTICE LAW IN: NEW YORK
NEW JERSEY • CONNECTICUT • MASSACHUSETTS • PENNSYLVANIA
WASHINGTON, D.C. • ILLINOIS • FLORIDA • CALIFORNIA • HAWAII

**BROOKLYN OFFICE**
776A Manhattan Ave., Ste 104
Brooklyn, NY 11222
Phone: (718) 609-0303
Facsimile (718) 841-7508
dmarzec@marzeclaw.com

---

**Via ECF**

November 30, 2021

Honorable James R. Cho
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 13B-South
Brooklyn, New York 11201

Re:    **Dublanski vs. Quality Installations of NY, Inc., et al.**
       **Case No.: 1:20-cv-05533 (PKC) (JRC)**

Dear Magistrate Judge Cho:

We represent Plaintiffs Bernard Dublanski ("Mr. Dublanski") and Pawel Dwornik ("Mr. Dwornik") (collectively "Plaintiffs") in the above-referenced matter ("Action"). We write jointly on behalf of the parties to request the Court approve the Settlement Agreement reached by the parties in the Action. A copy of the fully executed Settlement Agreement is attached. Final approval of the settlement will bring this Action to a close.

The parties request Court approval of their settlement because the claims in this Action include claims under the Fair Labor Standards Act ("FLSA"), which requires Court approval of the settlement of FLSA claims. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). When reviewing an FLSA settlement that does not involve a certified class, as is the case here, the Court typically examines the following factors: "(1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; and (6) the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation." Abrar v. 7-Eleven, Inc., 2016 WL 1465360 *2 (EDNY 2016) (citations omitted). Courts will also consider whether the settlement is the result of an arm's length negotiation conducted in good faith by counsel with significant experience litigating wage and hour claims. See Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 662081 *1-2 (EDNY 2014).

<u>The Claims Asserted In The Complaint By Plaintiffs</u>

Plaintiffs previously worked as furniture installers/ construction workers and carpenters for Defendants Quality Installations of NY, Inc. and East Coast Furniture, Inc. ("Corporate Defendants"), Antoni Perlicki, Daniel Perlicki, Marek Babula and Anna Perlicka ("Individual Defendants") (collectively "Defendants"), as a full-time employees. On November 13, 2020, Plaintiff Dublanski commenced this Action against Defendants. On December 18, 2020, Plaintiff Bernard Dublanski filed his Amended Complaint. On January 12, 2021, Defendants filed their Answer to Plaintiff's Amended Complaint. On September 1, 2021, Plaintiff Bernard Dublanski filed his Second Amended Complaint to add Pawel Dwornik as a newly named Plaintiff.

The Second Amended Complaint contains five (5) causes of action: (1) breach of contract, (2) violation of New York Labor Law § 650, et seq., (3) violation of the FLSA, (4) quantum meruit, and (5) declaratory judgment that the practices complained of are unlawful under the FLSA, 29 U.S.C. § 201 et seq., NYLL – 12 NYCRR § 142 and Article 6 of the NYLL § 190 et seq. All five (5) claims are based on Plaintiffs' allegations that they were not paid their earned wages and overtime while employed by Defendants, and that they feared retaliation and termination of their employment should they speak up to Defendants concerning non-payment of lawful prevailing and overtime wages. Defendants filed an Answer on or about January 12, 2021 denying the allegations asserted in the Amended Complaint and denied they owed Plaintiffs wages or overtime compensation. The Second Complaint alleged failure to comply with documents/notices required by law, such as a summary of wage statements and failure to display legally required job site notices concerning state and labor laws. The Second Amended Complaint further alleged that Defendants failed to provide their employees, in writing in English and in the language identified by each employee as the primary language of the employee, a notice containing the rate or rates of pay and basis thereof, in contravention of NYLL § 195(1). Moreover, the Second Amended Complaint alleged that Defendants failed and never tracked Plaintiffs' hours worked for any given day of a week during which each Defendant was employed.

The Proposed Settlement

The proposed settlement involves only the individual claims asserted by Plaintiffs in the Action. Neither class nor collective claims will be settled as Plaintiffs have not made any application before the Court for conditional or other certification of the putative class.

The proposed Settlement Agreement requires Defendants to pay Plaintiffs $85,000.00 ("Settlement Amount"), inclusive of attorneys' fees and costs, in full satisfaction of all claims Plaintiffs have or may have against the Defendants. The Settlement Amount will be paid as follows: $28,068.41 to Dublanski, One check made payable to "Pawel Dwornik" in the amount of $14,034.20, apportioned as payment for alleged liquidated damages for which an IRS form 1099 will be issued. Dwornik will be required to complete a W-9 form as a condition of receiving this payment under the Agreement. A second check made payable to "Pawel Dwornik" in the amount of $14,034.21, apportioned as payment for alleged damages as and for wages for which an IRS form 1099 will be issued.
, and $28,863.18 to the Marzec Law Firm, P.C. as attorneys. Defendants agree to make payment of the Settlement Amount within twenty-one (21) calendar days after: (a) Defendants receive a signed original of this Agreement and Release (email copy acceptable); and (b) the Court approves this Settlement Agreement. Plaintiffs' counsel shall file the Stipulation and Order of Dismissal attached as Exhibit A to the Settlement Agreement within 5 days of receipt and clearing of the Settlement Payment, which shall be sent to Marzec Law Firm, P.C. via USPS. A true copy of the signed and duly executed Settlement Agreement with all exhibits is attached hereto as **Exhibit A**.

The parties, through their respective attorneys, have engaged in extensive settlement discussions and have exchanged information and documents regarding Plaintiffs' claims. The proposed settlement was reached at a mediation conducted by Raymond Nardo, Esq. and negotiated at arm's length by counsel experienced in litigating, and settling, wage and hour claims. A variety of factors were discussed and considered during the settlement negotiations, including the factual basis of the allegations that Plaintiffs were not paid earned wages and overtime wages, the weekly and daily hours that Plaintiffs claim they worked, the availability of evidence confirming or refuting Plaintiffs' claims of hours worked, the availability of documentation confirming payment of overtime compensation, and

Plaintiffs' work history working for Defendants, including their hourly and overtime pay rates during the period covered by the applicable statute of limitations. Litigation costs were also considered.

As alleged in Plaintiffs' Second Amended Complaint, Defendants employed Mr. Dublanski from on or about February 2016 to on or about May 2018. Mr. Dublanski worked no less than 5 days per week, usually 6 days per week. Throughout his employment, Mr. Dublanski was always paid the same amount per hour as he was paid straight time regardless of all overtime hours worked. Mr. Dublanski was paid $18.00 per hour in 2016 for all hours worked, $20.00 per hour in 2017 for all hours worked and $22.00 per hour in 2018 for all hours worked. For the period from February 1, 2016 to December 31, 2016, or 48 weeks of employment, Mr. Dublanski worked 70 hours per week with 40 hours to be paid as regular wages (at $18.00 per hour) and 30 hours to be paid as overtime wages at $27.00 per hour. Mr. Dublanski should have been paid $810.00 for 30 hours of overtime worked per week for a total of $1,530.00 per week in wages. Instead, Mr. Dublanski was paid $1,260.00 per week during this time period (48 weeks) for a total of $60,480.00 in wages paid. Mr. Dublanski, however, should have been paid $1,530.00 per week for a total of $73,440.00 during this time period, resulting in an underpayment of $12,960.00. For the period from January 2, 2017 to December 29, 2017, or 51 weeks of employment, Mr. Dublanski worked 70 hours per week with 40 hours to be paid as regular wages (at $20.00 per hour) and 30 hours to be paid as overtime wages at $30.00 per hour. Since Mr. Dublanski worked 30 hours of overtime each week during this time period, he should have been paid a total of $900.00 in overtime wages per week for a total weekly salary of $1,700.00. Instead, Mr. Dublanski was paid $1,400.00 per week during this time period (51 weeks) for a total of $71,400.00 in wages paid. Mr. Dublanski, however, should have been paid $86,700.00 during this time period, resulting in an underpayment of $15,300.00 for this period. For the period from January 1, 2018 to May 31, 2018, or 21 weeks of employment, Mr. Dublanski worked 70 hours per week with 40 hours to be paid as regular wages (at $22.00 per hour) and 30 hours to be paid as overtime wages at $33.00 per hour. Since Mr. Dublanski worked 30 hours of overtime each week during this time period, he should have been paid a total of $990.00 in overtime wages per week for a total weekly salary of $1,870.00. Instead, Mr. Dublanski was paid $1,540.00 per week during this time period (11 weeks) for a total of $32,340.00 in wages paid. Mr. Dublanski, however, should have been paid $39,270.00 during this time period, resulting in an underpayment of $6,930.00 for this period.

Mr. Dublanski worked a total of 120 weeks for Defendants and was paid a total of $164,220.00 in wages. Mr. Dublanski should have been paid $199,410.00 in wages for a total of $35,190.00 in unpaid wages. In addition, liquidated damages may apply for a portion of the time worked in the amount equal to the sum of unpaid wages. We note, however, that the full period of employment would not be covered for liquidated damages purposes. Prejudgment interest would apply for the time not covered by the liquidated damages portion. Mr. Dublanski would be entitled to one-half of the $31,694.85 in attorneys' fees and costs incurred in litigating this action.

Likewise, the Second Amended Complaint alleged that Mr. Dwornik worked for Defendants from on or about May 30, 2018 to on or about May 30, 2021. Mr. Dwornik worked no less than 5 days per week, usually 6 days per week. Throughout his employment, Mr. Dwornik was always paid the same amount per hour as he was paid straight time regardless of all overtime hours worked. Mr. Dwornik was initially paid $20.00 per hour and in February 2019 he received a raise to $21.00 per hour. He received his final raise to $22.00 per hour on or about February 2020. For the period from May 30, 2018 to January 31, 2019, or 35 weeks of employment, Mr. Dwornik worked 70 hours per week with 40 hours to be paid as regular wages (at $20.00 per hour) and 30 hours to be paid as overtime wages at $30.00 per hour. Mr. Dwornik should have been paid $900.00 for 30 hours of overtime worked per

week for a total of $1,700.00 per week in wages. Instead, Mr. Dwornik was paid $1,400.00 per week during this time period (35 weeks) for a total of $49,000.00 in wages paid. Mr. Dwornik, however, should have been paid $1,700.00 per week for a total of $59,500.00 during this time period, resulting in an underpayment of $10,500.00. For the period from February 1, 2019 to January 31, 2020, or 52 weeks of employment, Mr. Dwornik worked 70 hours per week with 40 hours to be paid as regular wages (at $21.00 per hour) and 30 hours to be paid as overtime wages at $31.50 per hour. Since Mr. Dwornik worked 30 hours of overtime each week during this time period, he should have been paid a total of $945.00 in overtime wages per week for a total weekly salary of $1,700.00. Instead, Mr. Dwornik was paid $1,470.00 per week during this time period (52 weeks) for a total of $76,440.00 in wages paid. Mr. Dwornik, however, should have been paid $92,820.00 during this time period, resulting in an underpayment of $16,380.00 for this period. For the period from February 1, 2020 to May 31, 2021, or 69 weeks of employment, Mr. Dwornik worked 70 hours per week with 40 hours to be paid as regular wages (at $22.00 per hour) and 30 hours to be paid as overtime wages at $33.00 per hour. Since Mr. Dwornik worked 30 hours of overtime each week during this time period, he should have been paid a total of $990.00 in overtime wages per week for a total weekly salary of $1,870.00. Instead, Mr. Dwornik was paid $1,540.00 per week during this time period (69 weeks) for a total of $106,260.00 in wages paid. Mr. Dwornik, however, should have been paid $129,030.00 during this time period, resulting in an underpayment of 22,770.00 for this period.

Mr. Dwornik worked a total of 156 weeks for Defendants and was paid a total of $227,700.00 in wages when he should have been paid $277,350.00, resulting in an underpayment in the sum of $49,650.00. In addition, liquidated damages may apply for a portion of the time worked in the amount equal to the sum of unpaid wages. We note, however, that the full period of employment would not be covered for liquidated damages purposes. Prejudgment interest would apply for the time not covered by the liquidated damages portion. Mr. Dwornik would be entitled to one-half of the $31,694.85 in attorneys' fees and costs incurred in litigating this action.

Despite Mr. Dwornik appearing to be owed almost $15,000 more in base wages than Mr. Dublanski given the longer period of employment, it appears that despite the allegations of having worked approximately 30 hours of overtime per week, significant proof problems would likely prevent Mr. Dwornik from proving the numbers of hours worked at trial.

Moreover, taking into consideration the Complaint's allegations that Defendants failed to furnish Plaintiffs with a statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 142-2.7, and that Defendants failed to provide other required notices under the law, as well as the damages associated and attending thereto which can be assessed against Defendants for these alleged violations in the sum of $10,000.00 for each Plaintiff, the settlement amount in the sum of $28,068.41 to be paid to Mr. Dublanski and $14,034.20 to be paid to Mr. Dwornik under the Settlement Agreement is fair and reasonable, particularly in light of Defendants' agreement to pay Plaintiffs' attorneys' fees and costs in litigating this matter. Of course, the damage calculations assume certain facts that may not necessarily be entirely proved, and documents may not exist. In addition, there may be significant litigation risk and potential proof problems should the case go to trial. Defendants are all being represented by competent counsel specializing in wage and hour matters.

After much negotiation and a mediation conducted by Raymond Nardo, Esq., a settlement was reached that is believed to represent a fair resolution of Plaintiffs' claims. Several various settlement agreement copies were circulated, and many changes made. The parties are satisfied with the text and

substance of the proposed settlement. The parties, and their attorneys, believe the settlement represents a reasonable and appropriate compromise of the claims asserted by Plaintiffs in their Second Amended Complaint and a hearing should be scheduled on the proposed settlement, or as the Court deems appropriate.

<u>Attorneys' Fees And Costs</u>

It is submitted that the proposed settlement and the attorneys' fees charged, and costs incurred, thereof by the Plaintiffs are reasonable under the circumstances. In the Second Circuit, the reasonable hourly rate for an attorney shall be based on the customary fee charged for similar services by lawyers in the community with like experience and of other comparable reputation to those by whom the prevailing party was represented. <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections</u>, 522 F.3d 182, 184 (2d Cir. 2008); <u>Cohen v. W. Haven Bd. of Police Comm'rs</u>, 638 F.2d 496, 506 (2d Cir. 1980) ("The fees that would be charged for similar work by attorneys of like skill in the area [is] the starting point for determination of a reasonable fee award."). An award of attorneys' fees is within the discretion of the Court. Such award, however, must be evidenced by a showing of the hours expended and the prevailing hourly rate "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Gierlinger v. Gleason,</u> 160 F.3d 858, 882 (2d Cir. 1998) (internal quotations omitted).

Attached hereto as **Exhibit B** are the hour entries for the undersigned and his associates working on this matter, along with costs incurred and paid. Attorneys' fees expended are $31,694.85, consisted of 71.1 hours of attorney time, and costs incurred of $529.85. A reasonable hourly fee for the attorney with the undersigned's experience as well as the senior associate of the Marzec Law Firm, P.C., who both worked on this matter, is $450.00 per hour. The undersigned was first admitted to the bar in 2006 and is admitted to ten (10) legal jurisdictions of the United States (New York, New Jersey, District of Columbia, Illinois, Pennsylvania, Florida, California, Massachusetts, Connecticut, and Hawaii), as well as to the United States District Court for the Eastern District of New York, the Southern District of New York, the District of New Jersey, and Middle and Eastern Districts of Pennsylvania. The undersigned is also admitted to practice law before the Second Circuit and all bankruptcy courts in the above districts. The undersigned has handled more than three hundred (300) matters in federal courts, including bankruptcy courts, in addition to state court litigation and out of court settlements. The senior associate attorney who worked on this matter possesses more than 25 years of experience practicing law in this District, Circuit and State and is also admitted to practice law before the Second Circuit and the Eastern and Southern Districts of New York. Further, the junior associate who worked on this matter has several years of litigation experience. As part of the settlement, the undersigned has agreed to accept $28,333.33 for attorneys' fees including $529.85 for costs ($400.00 filing fee, $103.00 for service of process, $5.60 postage and $21.25 copying costs) incurred in this Action, which is slightly below the actual billings on this case. Attached as **Exhibit C** is a copy of the process server's invoice. Plaintiffs' counsel would not charge additional fees to bring this matter to close.

Accordingly, the Plaintiffs respectfully request that the Court approve the proposed settlement and Settlement Agreement, including approval of the payment of attorneys' fees and costs therein. Should Your Honor require a proposed Order approving the settlement, the parties will submit it upon Your Honor's request for consideration.

Respectfully submitted,

/s/ Darius A. Marzec

Darius A. Marzec

DM:jn

CC:         Tyler B. Levenson, Esq.
            (via ECF and email)

Enclosures:  Settlement Agreement
             Attorney Time Records
             Invoice – Service of Process